1  BRIAN R. BLACKMAN (SBN 196996)
   bblackman@blaxterlaw.com
2  J.T. WELLS BLAXTER (SBN 190222)
   wblaxter@blaxterlaw.com
3  DAVID P. ADAMS (SBN 312003)
   dadams@blaxterlaw.com
4  BLAXTER | BLACKMAN LLP
   601 Montgomery Street, Suite 1110
5  San Francisco, California 94111
   Telephone: (415) 500-7700
6
   Attorneys for Petitioners WHOLE
7  FOODS MARKET CALIFORNIA, INC.,
   WHOLE FOODS MARKET SERVICES, INC.,
8  and MRS. GOOCH'S NATURAL FOOD
   MARKETS, INC.
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12  In re: Subpoena of WHOLE FOODS          Case No. 5:24-mc-80123
    MARKET CALIFORNIA, INC., WHOLE
13  FOODS MARKET SERVICES, INC., and        **NOTICE OF MOTION TO COMPEL
    MRS. GOOCH'S NATURAL FOOD               FOOD IN-DEPTH TO PRODUCE
14  MARKETS, INC. to FOOD IN-DEPTH INC.     DOCUMENTS PURSUANT TO
                                            PETITIONERS' SUBPOENA;
15                                          MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT
16                                          THEREOF**

17                                          Date:  July 2, 2024
                                            Time:  10:00 A.M.
18                                          Place: 280 South 1st Street, Room 2112
                                                   San Jose, CA 95113
19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 3

I.      INTRODUCTION.................................................................................. 3

II.     STATEMENT OF ISSUES TO BE DECIDED........................................ 4

III.    BACKGROUND..................................................................................... 4

       A.    Plaintiffs' Allegations and Case Background. .............................. 4

       B.    Petitioners' Subpoena to Food In-Depth and the Present Dispute. .............. 5

            1.    Food In-Depth Obtains Seven Extensions of Time to Produce Documents, Then Fails to Abide by Agreements to Produce Documents................................................................................ 6

            2.    Food In-Depth Fails to Serve Timely Objections and the Parties Dispute Whether Objections are Waived. ........................ 6

            3.    Food In-Depth Seeks a Premature, and Improper, Agreement on Cost-Shifting. .................................................... 7

            4.    Food In-Depth Seeks to Limit Production of Electronic Files to Certain Custodians. ............................................... 7

            5.    Food In-Depth Refuses to Produce Documents Related to the Food In-Depth Article's Accuracy.......................... 8

            6.    Food In-Depth Refuses to Produce Documents Related to its Corporate Form. .................................................... 8

            7.    Food In-Depth Refuses to Stipulate to Have This Matter Heard in The Central District. ............................... 9

IV.   PETITIONERS' REQUEST TO TRANSFER TO THE CENTRAL DISTRICT................................................................. 9

V.    DISPUTED ISSUES AND LEGAL ARGUMENT ............................... 10

       A.    Legal Standard on Motion to Compel Subpoena Compliance. ................... 10

       B.    Food In-Depth Waived All Objections. .................................... 10

       C.    Food In-Depth Is Not Entitled to Cost Shifting. ........................ 13

            1.    Food In-Depth's Estimated Cost is Inflated and Speculative.......... 13

-i-

2.   Food In-Depth's Failure to Serve Timely Objections Waived its Ability to Request Cost Shifting.................................. 14

3.   Food In-Depth's Unique Position as an Interested Third-Party in This Case Weighs Against Cost Shifting. ................................... 15

4.   Food In-Depth Rejected Common-Sense Compromises That Would Entirely Negate Its Claimed Costs. .................................... 16

D.   The Court Should Order a Production From All Custodians of Electronic Discovery. .................................................................. 16

E.   Documents Related to the Accuracy of the Food In-Depth Article. ........... 17

1.   Request for Production No. 14........................................................ 17

2.   Request for Production No. 3.......................................................... 20

3.   Request for Production No. 5.......................................................... 21

4.   Request for Production No. 6.......................................................... 22

5.   Request for Production No. 11........................................................ 23

F.   Documents Related to Food In-Depth's Corporate Form. .......................... 24

1.   Request for Production No. 51........................................................ 24

VI.   CONCLUSION ...................................................................................................... 25

1

2

# <u>TABLE OF AUTHORITIES</u>
## <u>FEDERAL CASES</u>

3

Page

4

*Cornell v. Columbus McKinnon Corp.*
   2015 WL 4747260 (N.D. Cal. Aug. 11, 2015)...........................................................................15

5

*Env't World Watch, Inc. v. The Walt Disney Co.*
   2011 WL 13124125 (C.D. Cal. Nov. 3, 2011).........................................................................17

6

*Legal Voice v. Stormans Inc.*
   738 F.3d 1178 (9th Cir. 2013) ................................................................................................13

7

8

*McCoy v. Southwest Airlines Co., Inc.*
   211 F.R.D. 381 (C.D.Cal.2002) ..............................................................................................11

9

*Michael Wilson & Partners, Ltd. v. Sokol Holdings, Inc. (In re Michael Wilson & Partners, Ltd.)*
   520 Fed. Appx. 736 (10th Cir.2013)........................................................................................16

10

11

*Moon v. SCP Pool Corp.*
   232 F.R.D. 633 (C.D. Cal. 2005) .....................................................................................10, 11

12

*Schoonmaker v. City of Eureka*
   2018 WL 5829851  (N.D. Cal. Nov. 7, 2018)..........................................................................10

13

14

*Tutor–Saliba Corp. v. United States*
   32 Fed.Cl. 609 (1995) .............................................................................................................15

15

*United States v. CBS, Inc.*
   103 F.R.D. 365 (C.D. Cal. 1984) ............................................................................................14

16

17

*United States v. McGraw-Hill Companies, Inc.*
   302 F.R.D. 532 (C.D. Cal. 2014) ..............................................................................13, 14, 16

18

## <u>RULES</u>

19

20

Page

21

Fed. R. Civ. Pro. 26 ......................................................................................................................18

22

Fed. R. Civ. Proc. 45 .........................................................................................................10, 11, 14, 16

23

24

25

26

27

28

-iii-

1

## NOTICE OF MOTION

2       TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

3       PLEASE TAKE NOTICE that on July 2, 2024 at 10:00 AM, or as soon thereafter as

4   counsel may be heard in United State District Court for the Northern District of California located

5   at 280 South 1st Street, Room 2112, San Jose, CA 95113, petitioners Whole Foods Market

6   California, Inc., Mrs. Gooch's Natural Food Markets, Inc., and Whole Foods Market Services, Inc.

7   (collectively, "Petitioners"), will and hereby do move to compel third party Food In-Depth Inc.

8   ("Food In-Depth") to provide further production of documents in response to Petitioners' subpoena

9   to produce documents (the "Subpoena") issued in the matter *Sara Safari, et al. v. Whole Foods*

10  *Market Services, Inc., et al*. pending in the United States District Court for the Central District of

11  California (Case No. 8: 22-cv-01562 JWH-KESx) (the "Related Action").

12      This motion is made pursuant to Federal Rule of Civil Procedure Rules 26 and 45 and Civil

13  Local Rules 7-1, 7-2, and 37-1 through 37-4 on the grounds that Petitioners are entitled to full

14  production of relevant documents in response to their Subpoena and that Food In-Depth has waived

15  its objections by failing to timely serve them.  Accordingly, Petitioners seek an order from this

16  Court: (1) transferring this motion to the Central District to avoid the chance of potentially

17  inconsistent rulings; or, in the alternative, (2) holding that Food In-Depth waived objections to the

18  Subpoena; (3) holding that Food In-Depth is not entitled to premature cost-shifting; (4) ruling that

19  Food In-Depth is required to review the files of each of the eight directors and officers publicly

20  listed on its website to locate and produce responsive documents within its possession, custody or

21  control; (5) holding that documents relating to the accuracy of the Food In-Depth Article are

22  relevant and discoverable under the balancing test set forth in Rule 26(b)(1) and must be produced;

23  and (6) ruling that Food In-Depth must produce documents related to its corporate form.

24      This motion is made following multiple conferences of counsel pursuant to Civil Local

25  Rule 37-1 that took place from January 17, 2024 through May 9, 2024.  This motion is based upon

26  this Notice of Motion, the accompanying Memorandum of Points and Authorities and Declaration

27  of David Adams, all other pleadings, papers, records and documentary materials on file in this

28

-1-

1  action and in the Related Action, and such further evidence and argument as the Court may allow at

2  the hearing on this motion.

3

4  Dated:  May 20, 2024                          BLAXTER | BLACKMAN LLP

5

6                                    By:  _____
                                              /s/ David P. Adams
7                                          BRIAN R. BLACKMAN
                                           DAVID P. ADAMS
8                                    Attorneys for Petitioners WHOLE FOODS
                                     MARKET CALIFORNIA, INC., WHOLE FOODS
9                                    MARKET SERVICES, INC., and MRS. GOOCH'S
                                        NATURAL FOOD MARKETS, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

### I.   <u>INTRODUCTION</u>

3      Petitioners Whole Foods Market California, Inc. ("WFM CA"), Whole Foods Market

4  Services, Inc. ("WFM Services"), and Mrs. Gooch's Natural Food Markets, Inc. ("Mrs. Gooch's";

5  collectively "Petitioners[1]") move for an order compelling third-party Food In-Depth, Inc. ("Food

6  In-Depth") to produce further documents responsive to Petitioners' subpoena for production of

7  documents (the "Subpoena") issued in the matter of *Sara Safari, et al. v. Whole Foods Market*

8  *Services, Inc., et al.* pending in the United States District Court for the Central District of

9  California (Case No. 8:22-cv-01562 JWH-KESx) (the "Related Action").

10      The Related Action is a false advertising putative class action in which the plaintiffs

11  Peymon Khaghani and Sara Safari (collectively "Plaintiffs") rely on testing conducted by Food In-

12  Depth to allege that Petitioners falsely promise the beef sold in California Whole Foods Market

13  stores contains no antibiotics.  Food In-Depth allegedly conducted its testing at the slaughterhouse

14  of one of Petitioners' beef suppliers in 2020 and published results from its study in an April 2022

15  *Science Magazine* article (the "Food In-Depth Article").  Petitioners served a subpoena on Food

16  In-Depth seeking documents and correspondence related to the scope, method and accuracy of the

17  testing conducted and described in the Food In-Depth Article.  Food In-Depth has produced a total

18  of 23 pages of documents in response to the Subpoena, while withholding responsive and relevant

19  documents that bear on the article's scope, method and accuracy.  Food In-Depth has done so on

20  the erroneous grounds that these documents are irrelevant, and that it is entitled to have Petitioners

21  pay their estimated cost of review and production before the review is undertaken.  Food In-Depth

22  takes this position despite the fact that it has no grounds to withhold documents or request cost

23  shifting because it failed to serve timely objections to Petitioners' Subpoena.  In any event, Food

24  In-Depth's estimation that it will cost $74,000 to review 7,400 potentially responsive documents is

25  grossly inflated.  Finally, Food In-Depth refused to stipulate to have this matter heard in the

26  Central District despite the fact that having the present motion heard in this Courts risks the

27

28

---

[1] Petitioners are sometimes referred to as "Defendants" herein when sources are quoted, due to the
context of this Petition.

1  possibility of inconsistent rulings on key issues or relevance, and Food In-Depth faces no burden

2  attending proceedings in the Central District remotely.

3  **II.   STATEMENT OF ISSUES TO BE DECIDED**

4      Petitioners seek an order from this Court: (1) transferring this motion to the Central

5  District to avoid the chance of potentially inconsistent rulings; or, in the alternative, (2) holding

6  that Food In-Depth waived all objections to the Subpoena; (3) holding that Food In-Depth is not

7  entitled to premature cost-shifting; (4) ruling that Food In-Depth is required to review the files of

8  each of the eight directors and officers publicly listed on its website to locate and produce

9  responsive documents within its possession, custody or control; (5) holding that documents

10  relating to the accuracy of the Food In-Depth Article are relevant and discoverable under the

11  balancing test set forth in Rule 26(b)(1) and must be produced; and (6) ruling that Food In-Depth

12  must produce documents related to its corporate form.

13  **III.   BACKGROUND**

14  **A.   Plaintiffs' Allegations and Case Background.**

15      Plaintiffs in the Related Action allege that Petitioners falsely advertise the beef products

16  sold at Whole Foods Market stores in California using the slogan "No Antibiotics Ever." *See*

17  Declaration of David Adams ("Adams Decl."), Ex. 1 [Second Amended Complaint – ECF No.

18  108], ¶2. Plaintiffs rely on two sources of product testing as factual support for their allegations of

19  deception. First, Plaintiffs allege that an animal rights organization (and now-dismissed former

20  Plaintiff in this action) Farm Forward, conducted testing showing that a single product purchased

21  from a Whole Foods Market store in California may have tested positive for antibiotics. Second,

22  Plaintiffs rely more heavily on testing conducted by a third-party, respondent Food In-Depth, that

23  allegedly shows that cattle destined for sale at Whole Foods Market tested positive for antibiotics:

24          In 2020, Food In Depth ("FoodID"), an independent, third-party,
          testing organization, conducted an extensive antibiotics testing

25          program of "raised without antibiotics" cattle at a Slaughterhouse
          One [*sic*], a facility that supplied Whole Foods' stores in both

26          Northern and Southern California during the class period. FoodID's
          evidence of antibiotics use in Whole Foods' Certifier's beef reveals

27          Whole Foods' "No Antibiotics, Ever" promise for what it is: a
          marketing scheme designed to increase profits at the expense of

28

-4-

conscientious consumers. The study found that over the seven-month testing period, approximately 26% of Whole Foods' Certifier's cattle came from a lot where at least one animal tested positive, and 22% of Whole Foods' Certifier's cattle came from a lot where two animals tested positive for antibiotics. Whole Foods' certifying entity and certification program, Global Animal Partnership (GAP), was developed by and is used almost exclusively by Whole Foods. FoodID's testing led scientists to suggest that there was [*sic*] *systemic problem* in Whole Foods' certifying entity's beef supply chain. The results of FoodID's testing indicate that at least one out of every five head of cattle at Slaughterhouse One that were in Whole Foods' certification program had been raised with antibiotics. FoodID notified Whole Foods. Both Plaintiffs purchased Beef Products from Whole Foods entities that sourced beef from this tainted supply chain.

Adams Decl., Ex. 1, ¶3; *accord id.* at ¶¶58-62.

Based on these allegations, Plaintiffs seek actual damages and restitution in the amount of an alleged price premium paid by the putative class for, and/or Petitioners' profit deriving from, all beef purchases at Petitioners' stores in California during the statutory period.  *See* Adams Decl., Ex. 1, ¶¶14, 22, 103, 115, 122, 135, 143, 153, and Prayer for Relief at B.  Importantly, Plaintiffs' claim for punitive damages is also tethered to their allegations regarding Food In-Depth's conduct because Plaintiffs argue that Petitioners were aware of the alleged presence of antibiotics in their supply chain because Food In-Depth shared the results of its antibiotic testing with Petitioners in 2020.  *See* Adams Decl., Ex. 1, ¶¶2, 67-68, 136-145, and Prayer for Relief at B.

**B.     Petitioners' Subpoena to Food In-Depth and the Present Dispute.**

Given Plaintiffs' significant reliance on Food In-Depth's alleged testing, Petitioners drafted the Subpoena to Food In-Depth seeking documents related to Food In-Depth's testing. Adams Decl., ¶3, Ex. 2 [Subpoena].  On January 17, 2024, Food In-Depth's counsel agreed on a telephone call to accept service of the Subpoena.  Adams Decl., ¶4, Ex. 3 [Meet-and-Confer Email Correspondence] at 37.  Over the next four months, the parties embarked on an extensive-meet and-confer covering several disputes addressed in the present motion.[2]

///

_____

[2] The summary below condenses the meet-and-confer efforts for brevity's sake.  A more detailed recitation of the timeline and parties' specific communications is contained in the supporting Declaration of David Adams.

1        **1.      Food In-Depth Obtains Seven Extensions of Time to Produce Documents,**

2                **Then Fails to Abide by Agreements to Produce Documents.**

3        During the parties' extensive meet-and-confer conversations, Petitioners granted no less

4   than *seven* extensions of time for Food In-Depth to produce documents.  Adams Decl., ¶5, Ex. 3 at

5   9-37. Several of these extensions were conditioned on Food In-Depth producing documents for

6   which no dispute existed prior to the production deadline as the parties continued to meet-and-

7   confer.  Adams Decl., ¶5, Ex. 3 at 9, 30-31.  Despite these agreements, Food In-Depth produced

8   only 23 pages of documents in response to the Subpoena on February 21, 2024, and has otherwise

9   failed and refused to abide by its agreement to produce further documents.  Adams Decl., ¶5, Ex. 3

10  at 30.

11       **2.      Food In-Depth Fails to Serve Timely Objections and the Parties Dispute**

12               **Whether Objections are Waived.**

13       Food In-Depth failed to serve objections fourteen days after service of the Subpoena, and

14  when the parties met and conferred on February 13, 2024, Petitioners informed Food In-Depth that

15  its failure to serve timely objections waived any objections.  *See* Adams Decl., ¶6, Ex. 3 at 33, 36.

16  While Food In-Depth argued that its deadline to serve objections was implicitly extended when

17  Petitioners initially agreed to extend the Subpoena's production date (*Id.* at ¶7, Ex. 3 at 32, 34),

18  Petitioners explained that was not the case.  *Id.* at ¶8, Ex. 3 at 28.

19       As the parties continued to meet-and-confer, Food In-Depth *still* delayed in serving

20  objections to the Subpoena, even after Petitioners explained on February 13, 2024, that Food In-

21  Depth's failure to serve timely objections prejudiced Petitioners and hampered meet-and-confer

22  efforts.  *See* Adams Decl., ¶9, Ex. 3 at 28.  Food In-Depth did not serve its objections to the

23  Subpoena until March 1, 2024.  *Id.*, Ex. 4 [Food In-Depth's Objections].  Importantly, at no point

24  in the parties' meet-and-confer did Petitioners express any position other than a good-faith

25  willingness to negotiate a reasonable scope of production in response to the Subpoena despite

26  Food In-Depth's waiver of objections.  *See* Adams Decl., ¶10, Ex. 3 at 33, 36.

27  ///

28

1

**3.**     **Food In-Depth Seeks a Premature, and Improper, Agreement on Cost-**

2

**Shifting.**

3

On February 13, 2024, Food In-Depth requested that Petitioners agree to pay Food In-

4

Depth for the costs of review before Food In-Depth undertook the review.  *See* Adams Decl., ¶11,

5

Ex. 3 at 34.  In response, Petitioners inquired why Food In-Depth could not simply produce all

6

potentially responsive documents to Petitioners to avoid the cost of review.  *Id.*, ¶11, Ex. 3 at 21-

7

22.

8

On March 21, 2024, Food In-Depth replied and rejected Petitioners' proposal to avoid the

9

cost of review and production by producing all potentially responsive documents.  *See* Adams

10

Decl., ¶12, Ex. 3 at 14.  Nonetheless, on March 26, 2024, Petitioners agreed to pay the reasonable

11

cost of review after Food In-Depth completed the review and provided information supporting the

12

review's cost.  *Id.*, ¶12, Ex. 3 at 12.  Food In-Depth replied that it would not undertake production

13

without Petitioners first agreeing to not challenge the reasonableness of an agreed-upon amount of

14

costs (i.e., attorneys' fees) with the understanding that the amount of costs could decrease should

15

the review take less time than originally estimated.  *Id.*, ¶12, Ex. 3 at 9.  Petitioners stated that

16

agreeing to a minimum payment amount that was subject to reduction was logically contradictory

17

and meaningless, and Petitioners' position was unchanged.  *Ibid.*  On April 30, 2024, Food In-

18

Depth informed Petitioners that it identified 7,400 potentially relevant documents and unless it

19

could eliminate potentially duplicative documents from this review set, it would cost roughly

20

$74,000 dollars to review these documents.  *Id.* at ¶13.

21

**4.**     **Food In-Depth Seeks to Limit Production of Electronic Files to Certain**

22

**Custodians.**

23

Petitioners contend that Food In-Depth should search the electronic files of each officer,

24

director, and employee publicly listed on its website: Kevin Lo, Bill Niman, Joel Martin, Scott

25

Levitan, Scott Robbin, Dan Denny, Chuck Templeton, and Megan Hanley.  Adams Decl., ¶14, Ex.

26

3 at 8; Ex 5 [Food In-Depth's Website].  Food In-Depth consented to run searches for responsive

27

documents within the files of all these custodians except for Dan Denny, Chuck Templeton, and

28

Megan Hanley, claiming without providing any supporting facts that "files of Dan Denny, Chuck Templeton, and Megan Hanley are either not reasonably accessible or otherwise not in FoodID's possession, custody, or control."  Adams Decl., ¶14, Ex. 3 at 2.

**5.      Food In-Depth Refuses to Produce Documents Related to the Food In-Depth Article's Accuracy.**

Several RFPs in the Subpoena request documents regarding scope, method and accuracy of the testing and Food In-Depth Article.  *See* Adams Decl., ¶15, Ex. 2, RFP Nos. 3, 5, 6, 11, and 14.  On the parties' February 13, 2024 meet-and-confer call, Food In-Depth stated that these RFPs were overbroad because communications related to the logistics of publishing the Food In-Depth Article were irrelevant.  *Id.* at ¶16, Ex. 3, p. 34.  After a modest but incomplete production of documents on February 21, 2024, Petitioners offered to limit the scope of these RFPs "to exclude any communications related to the logistics of publishing the article" but made it clear that documents and communications bearing on the accuracy of the article must still be produced.  *Id.* at ¶17, Ex. 3, p. 28.

On March 6, 2024, Food In-Depth shifted its position, and argued that documents related to the Food In-Depth Article's scope, method and accuracy were confidential and burdensome to produce.  *See* Adams Decl., ¶18, Ex. 3 at 23.  Petitioners replied and explained that "Documents regarding the peer review process, however, are relevant because they provide insight into the validity of FoodID's testing methods."  *Ibid.*  Food In-Depth nonetheless refused to produce documents, and insisted the Court resolve the issue.  *Id.*, Ex. 3 at 2.

**6.      Food In-Depth Refuses to Produce Documents Related to its Corporate Form.**

On March 6, 2024, a month and a half after the Subpoena was served, Food In-Depth informed Petitioners for the first time that it would not produce documents sufficient to understand its corporate form in response to RFP No. 51.  Adams Decl., ¶19, Ex. 3 at 24.  Petitioners explained that these documents were necessary because Petitioners have been unable to determine Food In-Depth's corporate form, place of business, or agent for service of process and would need this information going forward in this case to ensure it could serve a trial Subpoena.  *Id.*  Food In-

1  Depth then agreed to produce documents filed with the Delaware Secretary of State regarding its

2  corporate form.  *Id.*, Ex. 3 at 8.  Food In-Depth then reneged on its agreement, refused to produce

3  further documents, and instead offered to discuss accepting service of the present Subpoena only

4  (blithely ignoring the fact the Subpoena had already been served).  *Id.*, Ex. 3 at 2.

5          **7.      Food In-Depth Refuses to Stipulate to Have This Matter Heard in The Central**

6                 **District.**

7          Finally, while motions to compel production of documents arising from subpoenas are

8  required to be brought in the district where compliance is required, Petitioners asked Food In-

9  Depth to stipulate to have this motion heard in the Central District where this matter is pending so

10 that the parties could avoid the expense of initiating a new action and having to get a new court

11 educated on this case.  *See* Adams Decl., ¶20, Ex. 3 at 4.  Food In-Depth refused and provided no

12 grounds for its refusal other than "its residence in the Northern District."  *Id.*, Ex. 3 at 1.

13 **IV.   PETITIONERS' REQUEST TO TRANSFER TO THE CENTRAL DISTRICT**

14         At the outset, Petitioners request that this Court transfer the present motion to the Central

15 District where the Related Action is being heard.  When the court where compliance is required

16 did not issue the subpoena, it may transfer a subpoena-related motion to the issuing court if the

17 nonparty consents or the court finds "exceptional circumstances."  Fed. R. Civ. Proc. 45(f).  "The

18 prime concern should be avoiding burdens on local nonparties subject to subpoenas and it should

19 not be assumed that the issuing court is in a superior position to resolve subpoena related

20 motions."  *Id*. at Adv. Comm. Note to 2013.  However, transfer may be appropriate "in order to

21 avoid disrupting the issuing court's management of the underlying litigation, as when that court

22 has already ruled on issues presented by the motion or the same issues are likely to arise in

23 discovery in many districts."  *Ibid*.  Courts may ease this burden by allowing the subpoenaed

24 third-party to attend the hearing remotely.  *Ibid*.

25         Here, Petitioners have been litigating the Related Action in the Central District for almost

26 two years and that Court is intimately familiar with the issues presented in this case after having

27 ruled on a motion to dismiss, a motion for reconsideration on the motion to dismiss, and seven

28

1   discovery-related motions.  Adams Decl., ¶21.  Any ruling from this Court regarding the relevance

2   of documents bearing on the validity of Plaintiffs' testing, will potentially disrupt the Central

3   District's management of this case by ruling on an issue that is likely to arise again in the

4   litigation.  Importantly, Petitioners will stipulate to hear this motion remotely in the Central

5   District to avoid imposing any burdensome travel on Food In-Depth's attorneys.

6                        **V.    DISPUTED ISSUES AND LEGAL ARGUMENT**

7   **A.      Legal Standard on Motion to Compel Subpoena Compliance.**

8              "At any time, on notice to the commanded person, the serving party may move the court

9   for the district where compliance is required for an order compelling production or inspection."

10  Fed. R. Civ. Proc. 45(d)(B)(i).

11             Should this Court decline to transfer the present motion to the Central District, Petitioners

12  request that the Court grant their motion to compel on the following issues.

13  **B.      Food In-Depth Waived All Objections.**

14             At the outset, the Court should grant Petitioners' motion because Food In-Depth waived all

15  objections to Petitioners' Subpoena by failing to timely object.  Federal Rule of Civil Procedure

16  45(d)(2)(B) states:

17                  A person commanded to produce documents or tangible things or to
                    permit inspection may serve on the party or attorney designated in
18                  the subpoena a written objection to inspecting, copying, testing, or
                    sampling any or all of the materials or to inspecting the premises--
19                  or to producing electronically stored information in the form or
                    forms requested. **The objection must be served before the earlier**
20                  **of the time specified for compliance or 14 days after the**
                    **subpoena is served**.
21

22  Fed. R. Civ. P. § 45(d)(2)(B) (emphasis added).  "A nonparty's failure to timely make objections

23  to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have

24  been waived." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *accord*

25  *Schoonmaker v. City of Eureka,* No. 17-CV-06749-VC (RMI), 2018 WL 5829851, at *1 (N.D.

26  Cal. Nov. 7, 2018).

27  ///

28

1    Petitioners served Food In-Depth with the Subpoena on January 17, 2024.  *See* Adams

2  Decl., ¶4, Ex. 3 at 37.  Any objections to the Subpoena or its individual document requests were

3  due fourteen days later, i.e., January 31, 2024.  Fed. R. Civ. P. § 45(d)(2)(B).  Food In-Depth did

4  not serve any objections by the deadline.  *See,* Adams Decl., ¶¶6-9, Ex. 4.  When confronted with

5  this fact, Food In-Depth claimed its deadline to serve objections was implicitly extended when

6  Petitioners initially agreed to extend the Subpoena's production date to February 21, 2024.  *Id.*, ¶7,

7  Ex. 3 at 32, 34.  Petitioners, however, had not agreed to extend Food In-Depth's objection

8  deadline.  *Id*, ¶8, Ex. 3 at 28.  The deadline to object is calculated based on the date the Subpoena

9  is *served*, not on the date of compliance.  Fed. R. Civ. P. § 45(d)(2)(B).  Thus, Petitioners'

10 agreement to extend the production deadline did not affect Food In-Depth's deadline to serve its

11 objections.  *Ibid.*  Regardless, even under Food In-Depth's own interpretation of Rule 45, Food In-

12 Depth further waived its objections by not serving them until March 1, 2024 – over a week after

13 its February 21, 2024 production date, and over two weeks after Petitioners initially informed

14 them of their waiver.  *Id*.

15    Food In-Depth will likely argue that "'[i]n unusual circumstances and for good cause, ...

16 the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena].'

17 [Citations]. Courts have found unusual circumstances where, for instance, the subpoena is

18 overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a

19 non-party acting in good faith."  *Moon,* 232 F.R.D. at 636, quoting *McCoy v. Southwest Airlines*

20 *Co., Inc*., 211 F.R.D. 381, 385 (C.D.Cal.2002).  "Unusual circumstances" do not exist in this case

21 for two reasons: (1) Food In-Depth has not acted in good faith to produce documents in this matter

22 and (2) the Subpoena, as discussed Sections V.D-V.F below, is not overly broad and does not

23 exceed the bounds of fair discovery.

24    Food In-Depth's failure to act in good faith in response to the Subpoena is evident in

25 several respects.  First, Food In-Depth waited over a month to serve objections after they were

26 due.  Adams Decl. at Ex. 4.  This significantly impaired the parties' meet-and-confer efforts, as

27 Petitioners pointed out to Food In-Depth, because it prevented Petitioners from ascertaining the

28

scope of the parties' disputes regarding production, delayed resolution of those disputes, and
prejudicing Petitioners' ability to effectively gather evidence to mount their defense in the Related
Action.

Second, despite receiving *seven* extensions of time to produce documents, Food In-Depth
ultimately produced only 23 pages. *Id*., ¶5. This is the company whose "testing" is the
cornerstone of Plaintiffs' factual basis for bring the Related Action. Food In-Depth also withheld
responsive documents in the custody of its Executive Chairman Kevin Lo (an agreed custodian in
this matter), despite Petitioners conditioning several extensions of Food In-Depth's time to
produce documents on its agreement to make rolling productions from Mr. Lo's files. *Id*., ¶5, Ex.
3 at 9.

Finally, in contrast to Food In-Depth's conduct, Petitioners have worked in good faith to
find an agreed scope of production to reduce any burden on Food In-Depth. Petitioners even
offered to pay Food In-Depth's reasonable costs of production upon proof thereof, despite the fact
that Food In-Depth waived all such rights by failing to timely object to the Subpoena. Adams
Decl., ¶12, Ex. 3 at 12.

Ultimately, Food In-Depth's failure to serve timely objections, and bad-faith failure to
comply with its discovery obligations waived its right to dispute *any* of the issues in this motion.
Food In-Depth's failure was not a mere technicality. Its objections were not served a day late.
They were served a month late, and weeks after the issue was brought to Food In-Depth's
attention and the parties had initiated a meet-and-confer process. Petitioners were prejudiced as a
result. The clear text of Rule 45 shows that the deadline to serve objections was set by the date of
service, not the production date (which Petitioners extended numerous times as a courtesy). Thus,
this Court should grant Petitioners' motion in its entirety because Food In-Depth has waived all
objections to the Subpoena.

///

///

///

**C.      Food In-Depth Is Not Entitled to Cost Shifting.**

The Ninth Circuit has held "that [Federal Rule of Civil Procedure] 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans Inc*., 738 F.3d 1178, 1184 (9th Cir. 2013).

Food In-Depth contends that Petitioners must pay for its cost of review, including its attorneys' fees, in advance and without first determining the actual reasonable cost of review. This position fails for multiple reasons: (1) Food In-Depth's estimated cost of review is grossly inflated, and speculative; (2) Food In-Depth's failure to serve timely objections waived its ability to request cost shifting; (3) Food In-Depth's unique position as a third-party in the Related Action weights against cost shifting here; and (4) Food In-Depth has rejected common-sense compromises that would entirely negate these costs.  While Petitioners initially agreed to pay the reasonable cost of Food In-Depth's review and production, in light of the forgoing factors Petitioners now seek a ruling from the Court denying cost shifting altogether.

**1.      Food In-Depth's Estimated Cost is Inflated and Speculative.**

Food In-Depth demands Petitioners pay a fixed minimum amount of $74,000.00 to review and produce 7,400 potentially responsive documents from five of eight custodians, but then offers to adjust this cost down if the review takes less time than anticipated.  Food In-Depth's proposal is logically unsound, and its estimated cost inflated.

First, as explained by Petitioners during the parties' meet-and-confer, Food In-Depth's proposal for Petitioners to agree to pay a minimum amount of Food In-Depth's review cost that is subject to downward adjustment makes no sense.  A minimum that is subject to downward adjustment is, definitionally, not a minimum.  An agreement to pay such a "minimum" would be illusory and unenforceable.

Regardless, fighting about the reasonableness of estimated costs is a purely speculative exercise.  Once the review is undertaken, the parties and Court (if necessary), will be in a position to actually judge the reasonableness of the cost of the review.  *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 537 (C.D. Cal. 2014) (denying third-party's request for

1  subpoena cost shifting until "after documents have been produced and a meaningful record has

2  been established, [at which point] the Court will review motions for cost-shifting from the non-

3  parties."). Requiring Petitioners to pay any amount of costs before the review is undertaken is

4  thus improper and could potentially result in a windfall for Food In-Depth. *Ibid.*

5  Second, Food In-Depth's proposed $74,000 in attorneys' fees is grossly inflated and

6  disproportionate to the likely actual cost of review for several reasons. To begin with, courts have

7  held that the cost of retaining outside counsel to review documents for privilege and

8  confidentiality are not recoverable costs for third parties responding to discovery. *United States v.*

9  *CBS, Inc.*, 103 F.R.D. 365, 374 (C.D. Cal. 1984) ("The Nonparty Witnesses will not be allowed to

10  recover the costs incurred in retaining outside counsel."). Even if this Court were to consider

11  attorneys' fees a legitimate cost, $74,000 is in stark contrast to the costs Petitioners were quoted

12  for a recent document review undertaken in the Related Action in which a discovery vendor

13  estimated the cost to review 86,303 documents at $127,258. Adams Decl., ¶13. That works out to

14  $1.47 per document. By contrast, Food-In-Depth's estimated cost to review a mere 7,400

15  documents works out to $10 per document.

16  **2.   Food In-Depth's Failure to Serve Timely Objections Waived its Ability to**

17  **Request Cost Shifting.**

18  Under Federal Rule of Civil Procedure 45 – the rule on which the Ninth Circuit's holding

19  in *Legal Voice* that "significant costs" must be shifted from subpoenaed third-parties is based –

20  cost shifting is available only "[i]*f an objection is made.*" Fed. R. Civ. P. 45(d)(2)(B) (emphasis

21  added). Thus, under the plain language of Rule 45, the Court's power to issue an order requiring

22  cost shifting is only invoked upon service of an effective objection made under Rule 45(d)(2)(B).

23  As explained in Section V.B of this brief, Food In-Depth failed to serve timely objections to the

24  Subpoena. Accordingly, Food In-Depth is not entitled to cost shifting.

25  ///

26  ///

27  ///

28

**3.      Food In-Depth's Unique Position as an Interested Third-Party in This Case Weighs Against Cost Shifting.**

In determining whether a third-party incurs significant expense in complying with a subpoena, "Courts also consider whether the nonparty has an interest in the outcome of the underlying case." *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188-SI, 2015 WL 4747260, at *3, 5 (N.D. Cal. Aug. 11, 2015). "Rule 45's cost-shifting provision "was not intended as a mechanism for entities which stand to benefit from certain litigation outcomes to evade discovery costs arising from their involvement in the underlying acts that gave rise to the lawsuit." *Id*. at *5, citing *Tutor–Saliba Corp. v. United States*, 32 Fed.Cl. 609, 610, nt. 5 (1995) (noting that the nonparty at issue, unlike many nonparties, was "substantially involved in the underlying transaction and could have anticipated that [its involvement might] reasonably spawn some litigation, and discovery")).

Here, not only did publication of the Food In-Depth Article directly set in motion the chain of events leading to the Related Action, but Food In-Depth's testing and article are the pivotal pieces of evidence used by Plaintiffs to support their allegations that Petitioners' "No Antibiotics Ever" statements are false or misleading. A comparison of the two bodies of testing allegations in Plaintiffs' operative complaint shows Plaintiffs rely far more on Food In-Depth's testing (seven months of testing involving 699 head of cattle purporting to show 15% of Petitioners' cattle came from lots testing positive for antibiotics) than they do on the testing conducted by Farm Forward (finding one single product purchased from a California Whole Foods Market allegedly contained antibiotics). *Compare* Adams Decl., Ex. 1, ¶¶58-62; with *Id.* at ¶¶63-66. Simply put, Food In-Depth generated the key allegations in Plaintiffs' Complaint in the Related Action, and did so freely and in pursuit of its own interests and goals. The Related Action followed as a result, and Food In-Depth cannot retain the benefits and acclaim arising from its freely taken and self-interested actions, while discounting the foreseeable consequences.

///

///

4.      **Food In-Depth Rejected Common-Sense Compromises That Would Entirely Negate Its Claimed Costs.**

"[O]ne thing is certain: an unreasonably incurred expense is not an expense "resulting from compliance [with a subpoena]." *McGraw-Hill Companies, Inc*., 302 F.R.D. at 536, citing to *Michael Wilson & Partners, Ltd. v. Sokol Holdings, Inc. (In re Michael Wilson & Partners, Ltd.)*, 520 Fed. Appx. 736, 741 (10th Cir.2013). "In other words, Rule 45 does not cut a blank check to non-parties—unnecessary or unduly expensive services do not "result from compliance" and, therefore, do not count as "expenses." *Id.* at 536. Specifically, attorneys' fees that are unnecessary because they are "for the non-party's sole benefit and peace of mind" are not reasonable and recoverable. *Ibid.*

During the parties' meet and confer on March 6, 2024, Petitioners suggested that Food In-Depth could entirely avoid incurring any costs associated with reviewing potentially responsive documents if it simply turned over all potentially responsive documents to Petitioners. Adams Decl., ¶11, Ex. 3 at 21-22. Unlike party discovery, where potentially sensitive privileged and confidential information could damage a party's interests by falling into the hands of a litigation adversary, here these considerations do not apply to Food In-Depth, a third party. Further, any confidentiality concerns Food In-Depth may have can be addressed through the stipulated protective order entered in the Related Action. Adams Decl., ¶22, Ex. 7 [Stipulated Protective Order]. Food In-Depth, however, rejected this proposal and did not articulate any specific argument against such disclosure in response to Petitioners' proposition. *Id.* at ¶12, Ex. 3, p. 14. Accordingly, any costs incurred by Food In-Depth associated with this review are not necessary, purely for Food In-Depth's sole benefit and peace of mind, and therefore not reasonable. Petitioners should not be required to pay for any such costs.

D.      **The Court Should Order a Production From All Custodians of Electronic Discovery.**

Food In-Depth is obligated to produce documents within its possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). Courts have held that the electronic files of officers and

directors of a company are discoverable under this standard. *Env't World Watch, Inc. v. The Walt Disney Co*., No. CV094045DMGPLAX, 2011 WL 13124125, at *4 (C.D. Cal. Nov. 3, 2011).

Petitioners contend that Food In-Depth should search the electronic files of each officer, directors, and employee publicly listed on its website: Kevin Lo, Bill Niman, Joel Martin, Scott Levitan, Scott Robbin, Dan Denny, Chuck Templeton, and Megan Hanley. Adams Decl., ¶14, Ex. 5 [Food In-Depth's Website]. Food In-Depth has consented to run searches for responsive documents within the files of all these custodians except for Food In-Depth's Co-Founder and Chief Scientist Dan Denny, and board members Chuck Templeton, and Megan Hanley. *Id.* at ¶14.

As Petitioners explained during the parties' meet-and-confer, however, the fact that Dan Denny, Chuck Templeton, and Megan Hanley are not Food In-Depth employees is immaterial. Petitioners have provided prima facie evidence that these individuals are affiliated with Food In-Depth by virtue of their listed positions on Food In-Depth's website, and Food In-Depth has provided no evidence to the contrary.

**E.     Documents Related to the Accuracy of the Food In-Depth Article.**

Petitioners contend that they are entitled to obtain a full and complete production of documents related to the accuracy of the Food In-Depth Article responsive to RFP Nos. 3, 5, 6, 11, and 14. Per Northern District Local Rule 37-2, Petitioners set forth each contested request, and Food In-Depth's objection below followed by Petitioners' arguments in favor of production.

**1.     Request for Production No. 14.**

**a.   Petitioners' Requests and Food In-Depth's Objections.**

**REQUEST NO. 14:** All DOCUMENTS and COMMUNICATIONS RELATING TO any peer review of YOUR ANTIBIOTICS TESTING on and/or testing results from CREEKSTONE CATTLE.

**RESPONSE TO REQUEST NO. 14**: FoodID objects to this Request as it relies on the burdensome and overly broad definitions of YOUR and CREEKSTONE CATTLE; FoodID interprets these terms as described above. FoodID objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. FoodID objects to

1 this Request to the extent it seeks information not relevant to the claims or defenses of any party,

2 not reasonably calculated to lead to the discovery of admissible evidence, or otherwise not within

3 the scope of relevant discovery. FoodID objects to this Request to the extent that it calls for the

4 production of documents or things that are protected by the attorney-client privilege, the attorney

5 work product doctrine, or any similar privilege or immunity. FoodID objects to the extent the

6 Request seeks information that violates her and/or third parties' right to privacy. FoodID objects to

7 this Request to the extent it seeks documents that have already been produced in this action.

8         Subject to and without waiving the foregoing objections, FoodID responds as follows:

9 FoodID directs Defendants to the documents with the bates stamp bearing NIMAN009-018, which

10 contain responsive documents containing supplementary materials attached to the APRIL 2022

11 SCIENCE MAGAZINE ARTICLE and describing the materials and methods for the testing

12 conducted by FoodID related to the APRIL 2022 SCIENCE MAGAZINE ARTICLE.

13         **b.   The Court Should Order Food In-Depth to Produce All Responsive**

14              **Documents.**

15         While Food In-Depth's response above directs Petitioners to some documents nominally

16 responsive to this request, the parties' meet-and-confer makes clear that Food In-Depth withheld a

17 substantial number of responsive documents on the grounds that information regarding the peer

18 review process, and correspondence with the Food In-Depth Article's authors regarding the article,

19 is allegedly confidential and burdensome to produce.  Adams Decl., ¶18, Ex. 3, p. 23.  Federal

20 Rule of Civil Procedure 26 states:

21              Parties may obtain discovery regarding any nonprivileged matter
               that is relevant to any party's claim or defense and proportional to
22              the needs of the case, considering the importance of the issues at
               stake in the action, the amount in controversy, the parties' relative
23              access to relevant information, the parties' resources, the importance
               of the discovery in resolving the issues, and whether the burden or
24              expense of the proposed discovery outweighs its likely benefit.

25 Fed. R. Civ. Pro. § 26(b)(1).

26         Information regarding the validity of Food In-Depth's testing, and the peer review process

27 conducted with regards to the Food In-Depth Article, is crucial to Petitioners' defense in the

28

Related Action and discoverable under the balancing factors set forth in Rule 26(b)(1).  First, as explained above, Plaintiffs' allegations of falsity and deception rest almost entirely on the validity of this testing and their discussion in the Food In-Depth Article.  Adams Decl., Ex. 1, ¶¶3, 58-62.  Thus, information bearing on the validity of this testing – such as how this testing was vetted during the scientific peer review process – is pivotal to Petitioners' defense.

Second, this discovery is proportional considering the importance of the issues at stake in the Related Action and the amount in controversy.  Whole Foods Market has consistently promised customers for over 40 years that its beef contains "No Antibiotics, Ever."  Adams Decl., Ex. 1, ¶¶39-52.  Petitioners take this promise seriously and take pride in their reputation as a trusted retailer of quality antibiotic-free beef products.  Plaintiffs' allegations of duplicity are therefore serious, and Petitioners are entitled to obtain relevant evidence bearing on their truth so that they can effectively defend their brand reputation, and defend against the significant damages Plaintiffs allege they are entitled to in the Related Action.  Adams Decl., Ex. 1, ¶¶14, 22, 103, 115, 122, 135, 143, 153, and Prayer for Relief at B.

Third, Petitioners have no access to the information requested regarding peer review other than through their subpoena power.  This factor weighs in favor of disclosure.

Fourth, any concerns Food In-Depth may have regarding the burden of production will be addressed by the Court's ruling on cost shifting, and the confidentiality of responsive documents may be preserved by designating responsive documents as confidential under the stipulated protective order entered in the Related Action.  Adams Decl., ¶22, Ex. 7.

In short, there are no grounds for withholding responsive documents regarding the peer review process, and this Court should issue an order compelling Food In-Depth to produce responsive documents.  To deny Petitioners discovery into this matter would be to allow any plaintiff to simply coordinate with a third-party to generate allegations supporting a complaint, then allow the plaintiff to walk into trial with their theory of the case untested by discovery or cross-examination after the defendant is denied discovery from the third-party.  This would be an untenable result running contrary to the principles of fair discovery in our judicial system.

1        **2.      Request for Production No. 3.**

2              **a.  Petitioners' Requests and Food In-Depth's Objections.**

3        <u>**REQUEST NO. 3:**</u> All COMMUNICATIONS between YOU and SCIENCE

4    MAGAZINE RELATING TO the APRIL 2022 SCIENCE MAGAZINE ARTICLE.

5        <u>**RESPONSE TO REQUEST NO. 3:**</u> FoodID objects to this Request as it relies on the

6    burdensome and overly broad definitions of YOU and SCIENCE MAGAZINE; FoodID interprets

7    these terms as described above. FoodID objects to this Request to the extent it seeks information

8    not relevant to the claims or defenses of any party, not reasonably calculated to lead to the

9    discovery of admissible evidence, or otherwise not within the scope of relevant discovery,

10   particularly as FoodID had extensive communications with SCIENCE MAGAZINE relating to the

11   APRIL 2022 SCIENCE MAGAZINE ARTICLE concerning topics ancillary to the substance of

12   the APRIL 2022 SCIENCE MAGAZINE ARTICLE. FoodID objects to this Request to the extent

13   that it calls for the production of documents or things that are protected by the attorney-client

14   privilege, the attorney work product doctrine, or any similar privilege or immunity. FoodID

15   objects that this Request is overbroad, unduly burdensome, and not proportional to the needs of

16   the case to the extent that it seeks information that is proprietary trade secret or confidential or

17   competitively sensitive and is not relevant to this litigation. FoodID objects to this Request to the

18   extent that it seeks confidential and/or trade secret information of a third-party, and which FoodID

19   is obligated to maintain as confidential information.

20              **b.  The Court Should Order Food In-Depth to Produce All Responsive**

21                   **Documents.**

22        Food In-Depth refuses to locate and produce documents responsive to RFP No. 3,

23   contending that many communications between itself and *Science Magazine* would not be

24   substantive or relevant, and those that might be substantive involve the peer review process and

25   are confidential.  Adams Decl., ¶18, Ex. 3, p. 23.  Petitioners offered the following to limit the

26   scope of the request to exclude non-substantive communications regarding logistics.  *Ibid.*  Food

27   In-Depth declined Petitioners' offer and refused to produce any responsive communications.

28

As explained in the previous sections, communications between Food In-Depth and *Science Magazine* bearing on the validity of Food In-Depth's testing are highly relevant to the Related Action and are therefore discoverable under the balancing test set forth in Rule 26(b)(1). Petitioners are entitled to discover information that bears on the credibility of the key evidence Plaintiffs use to support their allegations of falsity in the false advertising case.  Petitioners stand by their reasonable offer to limit the scope of this RFP to exclude non-substantive communications about formatting, scheduling calls, costs etc.  Food In-Depth, however, must produce communications that bear on the substance of the article.

Food In-Depth's burden and confidentially objections lack merit.  Neither objection weighs against production because the validity of the burden will be addressed by this Court's ruling on cost shifting, and confidentiality concerns can be addressed by the stipulated protective order entered in the Related Action.  Adams Decl., ¶22, Ex. 7.

**3.      Request for Production No. 5.**

**a.   Petitioners' Requests and Food In-Depth's Objections.**

**REQUEST NO. 5:**  All COMMUNICATIONS between YOU and Lance B. Price and/or Laura Rogers or their agents RELATED TO the APRIL 2022 SCIENCE MAGAZINE ARTICLE.

**RESPONSE TO REQUEST NO. 5:** FoodID objects to this Request as it relies on the burdensome and overly broad definition of YOU; FoodID interprets this terms as described above. FoodID objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks "All COMMUNICATIONS between YOU and Lance B. Price and/or Laura Rogers or their agents RELATED TO the APRIL 2022 SCIENCE MAGAZINE ARTICLE," which would include an extensive number of documents, particularly as Lance B. Price and Laura Rogers are coauthors on the APRIL 2022 SCIENCE MAGAZINE ARTICLE and thus exchanged many documents with FoodID regarding topics ancillary to the substance of the APRIL 2022 SCIENCE MAGAZINE ARTICLE. FoodID objects to this Request to the extent it seeks information not relevant to the claims or defenses of any party, not reasonably calculated to lead to the discovery of admissible evidence, or otherwise not

within the scope of relevant discovery. FoodID objects to the extent the Request seeks information that violates third parties' right to privacy. FoodID objects that this Request is overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information that is proprietary trade secret or confidential or competitively sensitive and is not relevant to this litigation.

### b.  The Court Should Order Food In-Depth to Produce All Responsive Documents.

The parties' positions with respect to RFP No. 5 are identical to those discussed with regard to RFP No. 3 above.  Adams Decl. Ex. 3, ¶18, p. 23.  Petitioners contend that communications between Food In-Depth and Lance B. Price and/or Laura Rogers, the co-authors of the Food In-Depth Article, are relevant and discoverable because they bear on the validity of the article's findings.  These findings are the key evidence used by Plaintiffs to support their allegations in the Related Action, and Petitioners are entitled to this discovery.  Food In-Depth must produce responsive documents under the balancing factors set forth in Rule 26(b)(1).  Any concerns regarding burden will be addressed by this Court's ruling on cost shifting, and confidentiality concerns can be addressed by the stipulated protective order.

### 4.     Request for Production No. 6.

#### a.  Petitioners' Requests and Food In-Depth's Objections.

**REQUEST NO. 6:** All YOUR internal COMMUNICATIONS RELATING TO the APRIL 2022 SCIENCE MAGAZINE ARTICLE.

**RESPONSE TO REQUEST NO. 6:** FoodID objects to this Request as it relies on the burdensome and overly broad definition of YOUR; FoodID interprets this terms as described above. FoodID objects to this Request to the extent it seeks information not relevant to the claims or defenses of any party, not reasonably calculated to lead to the discovery of admissible evidence, or otherwise not within the scope of relevant discovery. FoodID objects to this Request to the extent that it calls for the production of documents or things that are protected by the attorney-client privilege, the attorney work product doctrine, or any similar privilege or immunity. FoodID

1    objects to this Request to the extent it seeks documents that have already been produced in this

2    action, documents that have been requested from parties to this action, or documents that can

3    easily or more properly be obtained from parties to this action. FoodID objects that this Request is

4    overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it

5    seeks information that is proprietary trade secret or confidential or competitively sensitive and is

6    not relevant to this litigation.

7            **b.  The Court Should Order Food In-Depth to Produce All Responsive**

8                 **Documents.**

9            Petitioners' position with respect to RFP No. 6 is identical to that discussed with regards to

10   RFP Nos. 3, and 5 above.

11           **5.       Request for Production No. 11.**

12                **a.  Petitioners' Requests and Food In-Depth's Objections.**

13           **REQUEST NO. 11:**  All COMMUNICATIONS between YOU and Lance B. Price and/or

14   Laura Rogers or their agents RELATING TO YOUR ANTIBIOTICS TESTING of

15   CREEKSTONE CATTLE.

16           **RESPONSE TO REQUEST NO. 11:**  FoodID objects to this Request as it relies on the

17   burdensome and overly broad definitions of YOU and CREEKSTONE CATTLE; FoodID

18   interprets these terms as described above. FoodID objects to this Request on the grounds that it is

19   overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks "All

20   COMMUNICATIONS between YOU and Lance B. Price and/or Laura Rogers or their agents

21   RELATING TO YOUR ANTIBIOTICS TESTING of CREEKSTONE CATTLE," which would

22   include an extensive number of documents, particularly as Lance B. Price and Laura Rogers are

23   coauthors on the APRIL 2022 SCIENCE MAGAZINE ARTICLE and thus exchanged many

24   documents with FoodID regarding topics ancillary to the substance of the APRIL 2022 SCIENCE

25   MAGAZINE ARTICLE. FoodID objects to this Request to the extent it seeks information not

26   relevant to the claims or defenses of any party, not reasonably calculated to lead to the discovery

27   of admissible evidence, or otherwise not within the scope of relevant discovery. FoodID objects

28

1   that this Request is overbroad, unduly burdensome, and not proportional to the needs of the case to

2   the extent that it seeks information that is proprietary trade secret or confidential or competitively

3   sensitive and is not relevant to this litigation.

4                  **b.  The Court Should Order Food In-Depth to Produce All Responsive**

5                       **Documents.**

6           Petitioners' position with respect to RFP No. 11 is identical to that discussed with regards

7   to RFP Nos. 3, 5, and 6 above.

8   **F.     Documents Related to Food In-Depth's Corporate Form.**

9           Petitioners contend that they are entitled to obtain a full and complete production of

10  documents related to Food In-Depth's corporate form responsive to RFP No. 51.  Per Northern

11  District Local Rule 37-2, Petitioners set forth the contested request, and Food In-Depth's objection

12  below followed by Petitioners' argument in favor of production.

13              **1.  Request for Production No. 51.**

14                  **a.  Petitioners' Requests and Food In-Depth's Objections.**

15          **REQUEST NO. 51:** DOCUMENTS sufficient to understand YOUR corporate form and

16  mission.

17          **RESPONSE TO REQUEST NO. 51:**  FoodID objects to this Request as it relies on the

18  burdensome and overly broad definition of YOUR; FoodID interprets this term as described above.

19  FoodID objects to this Request to the extent it seeks information not relevant to the claims or defenses

20  of any party, not reasonably calculated to lead to the discovery of admissible evidence, or otherwise

21  not within the scope of relevant discovery. FoodID objects to this Request to the extent that it calls for

22  the production of documents or things that are protected by the attorney-client privilege, the attorney

23  work product doctrine, or any similar privilege or immunity.

24          Subject to and without waiving the foregoing objections, FoodID responds as follows: FoodID

25  directs Defendants to FoodID's website, available at https://www.foodid.com/, which contains

26  responsive documents regarding its mission.

27  ///

28

1

2

**b. The Court Should Order Food In-Depth to Produce All Responsive Documents.**

3   Food In-Depth agreed to produce documents related to its corporate form, then reneged on

4   this agreement and now refuses to produce such documents.  Adams Decl., ¶51, Ex. 3, p. 2, 8.

5   Food In-Depth claims to be located in the Northern District of California.  *Id.*, ¶20.  It, however,

6   does not appear on the California Secretary of State's website as having qualified to do business in

7   California under that name, nor has it filed a DBA in any of the Bay Area counties.  *Ibid.*  Thus,

8   Petitioners need these corporate documents to: (1) determine if Food In-Depth is incorporated

9   under a different name, (2) determine if it failed to qualify to conduct business in California, (3)

10  locate an officer, director or other person competent to receive service of deposition and trial

11  subpoenas, and (4) understand its mission and goals (which are relevant to its motivations in

12  testing cattle in the first place).  While Food In-Depth appears on the Delaware Secretary of State

13  website, that listing does not show an agent for service of process.  Adams Decl., ¶19, Ex. 6.

14  [Delaware Secretary of State Entity Details for Food In-Depth].  Petitioners are entitled to these

15  relevant and discoverable documents and Food In-Depth has not provided any argument as to why

16  it refuses to produce them.

17   **VI.    CONCLUSION**

18   For the reasons set forth herein, Petitioners request that this Court transfer the present

19  motion to the Central District, or, in the alternative, grant the substantive relief requested in the

20  present motion in its entirety.

21  Dated:  May 20, 2024                          BLAXTER | BLACKMAN LLP

22

23                                           By _____
                                                       */s/ David P. Adams*
24                                              BRIAN R. BLACKMAN
                                                J.T. WELLS BLAXTER
25                                              DAVID P. ADAMS
                                                Attorneys for Petitioners WHOLE FOODS
26                                              MARKET CALIFORNIA, INC., WHOLE
                                                FOODS MARKET SERVICES, INC., and
27                                              MRS. GOOCH'S NATURAL FOOD
                                                MARKETS, INC.

28